STRADLEY *v.* CARGILL ELEVATOR CO.

1. PARTNERSHIP ASSOCIATIONS—TREASURY STOCK—MISAPPLICA-
TION OF FUNDS.

Stock in a partnership association organized to deal in land
was assigned by the members to a trustee as treasury stock,
to be sold, and the proceeds used in paying debts of the asso-
ciation, and for such other uses as the board of managers
might direct. The proceeds were applied to a canal project,
which was contemplated in the original scheme, and upon
which the success of the association depended. *Held*, that
there was no misapplication of funds.

2. EQUITY PRACTICE—RIGHT TO RELIEF.

Equitable relief will not be granted on facts not set up in the
bill.

3. PARTNERSHIP ASSOCIATIONS — MORTGAGES — FORECLOSURE —
FRAUD.

The fact that land of a partnership association was bid in on
mortgage foreclosure, for less than its value, by a member of
the association who had formerly been chairman of the board
of managers, and who was personally responsible for the debt
secured, does not prove that there was fraud in the sale.

4. SAME—PAYMENT.

Where money was advanced to a partnership association to pur-
chase mortgages covering its property, with the understand-
ing that the mortgages should be assigned by the mortgagees
to the persons making such advances, which was done, *held*,
that the mortgages were not paid, but were still operative in
the hands of the assignees.

5. SAME—CONSIDERATION.

Lands were purchased for a partnership association, before its
organization, by one of the members, who executed purchase-
money mortgages, and the association agreed to indemnify
him for his personal liability thereon. At the foreclosure
sale there was a deficiency, to secure which the association
executed its mortgage to such member. *Held*, that the latter
mortgage was supported by a sufficient consideration.

6. SAME—CONVEYANCE OF EQUITY.

Conveyances by a partnership association of its equity of re-

demption in mortgaged lands in satisfaction of the mortgage debt were sustained; there being no such disparity of value as to indicate fraud.

7. SAME—ASSIGNMENT OF MORTGAGES—AVOIDING TAXATION.
The assignment by a partnership association of mortgages owned by it to one of its managers, to avoid paying taxes thereon, however reprehensible, does not operate as a fraud on the members of the association.

8. SAME—ARTICLES OF ASSOCIATION—FILING.
Where the articles of a partnership association were filed with a person holding both the office of register of deeds and county clerk, there was a compliance with 2 Comp. Laws, § 6079, requiring their filing with the register of deeds, notwithstanding, when the offices were separated, the record of the articles was taken by the clerk.

9. SAME—MEETINGS OF MEMBERS—VALIDITY—ESTOPPEL.
A member of a partnership association, who is represented by a duly authorized proxy at meetings of the members held outside of the State, is estopped from contending that such meetings were contrary to law, or that the by-law authorizing him to act by proxy was invalid.

10. SAME—NOTICE.
Under 2 Comp. Laws, § 6083, requiring written notice of a meeting of the members of a partnership association to be served on each member 10 days prior thereto, notice by mail, pursuant to a by-law of the association, is sufficient.

11. SAME—MEETINGS OF MANAGERS—VALIDITY—ESTOPPEL.
A member of a partnership association who signed, at a place outside the State, articles of association appointing a board of managers, all of whom lived at such place, and who presented a claim at one of the meetings of the board held there, and acted upon authority given him at another such meeting, cannot question the validity of action taken at any such meeting because held outside the State.

12. SAME—CONVEYANCES—AUTHORITY OF MANAGERS.
The articles of a partnership association, signed by the members, provided that the purpose and business of the association should be the buying, owning, selling, mortgaging, etc., of real and personal property. The association elected a board of managers, with authority to make such rules for the government and management of the business concerns of the association as they might think expedient, and for its general welfare, not contrary to the articles of association, etc. The

chairman and secretary were authorized to sign notes, deeds, leases, mortgages, or other papers required to be executed for or in the name of the association. *Held,* that the board of managers had the power to authorize the execution of deeds and mortgages.

13. SAME—SPECIAL MEETING OF MANAGERS—PRESUMPTIONS.
The mere fact that all of the managers of a partnership association were not present at a special meeting of the board does not raise a presumption that the meeting was irregular.

14. SAME—CONVEYANCES—VALIDITY.
A conveyance by a partnership association in payment of a *bona fide* indebtedness is not invalid, either at law or in equity, because one of the managers who authorized the same was a member of the firm whose debt was paid thereby.

Appeal from Chippewa; Steere, J. Submitted October 22, 1903. (Docket No. 67.) Decided January 5, 1904.

Bill by John G. Stradley against the Cargill Elevator Company and others to set aside certain conveyances and for an accounting. From a decree dismissing the bill, complainant appeals. Affirmed.

*John W. Shine,* for complainant.

*George A. Cady* ·(*John H. Goff,* of counsel), for defendants.

CARPENTER, J. Early in 1887, complainant and most of the individual defendants organized the Sault Ste. Marie Land Company, Limited, a limited partnership, under the laws of this State. Said association acquired the ownership of a large amount of land situated in the city of Sault Ste. Marie, in this State. Shortly after its organization, each member of said association transferred to defendant Samuel D. Cargill, as trustee, 50 per cent. of his stock, for the purpose of having the same sold for the benefit of the association. Said treasury stock so held by Cargill as trustee was sold to complainant's associates in

135 MICH.—24.

said enterprise at the rate of 12½ cents on the dollar. From 1892 to 1897, by many different transfers, the title to nearly all the land belonging to the association passed to one or more of its codefendants in this suit; and in nearly all these cases the title passed directly to, or for the benefit of, one or more of complainant's associates in this partnership association, limited. Complainant instituted this suit in chancery in 1899, charging that each of these transfers, and the sale of said treasury stock, were steps in a scheme of fraud devised by his associates to wreck the association and to acquire its property, and that all the transfers "were *ultra vires* of the said partnership association, and were executed without proper authority, and are therefore void." He asked the court to decree payment for the stock at its par value, and to set aside said transfers. An answer was filed, denying the material facts stated in the bill. The case was heard on pleadings and proofs, and a decree rendered dismissing the bill. From that decree an appeal was taken to this court.

We will first turn our attention to the charge of fraud, and will, so far as needful, discuss each transaction.

*Sale of the Treasury Stock.* The bill avers that this stock was divided for a nominal consideration, and never applied for the purpose for which it was contributed. This stock was assigned to be sold, and the proceeds used "in paying off mortgages, * * * in paying any other indebtedness of the company, and for such other uses as the board of managers may direct." The stock was sold at the rate of 12½ cents on the dollar, which was all, if not more than, it was worth. It is contended that we are to infer fraud because the proceeds arising from this sale were misapplied. The charge of misapplication is based upon the fact that the money derived from this sale went to the benefit of a project in which complainant and his associates in this enterprise were interested, namely, a project to build at Sault Ste. Marie a water-power canal. We are convinced that this application was made with the best of motives, and, moreover, that, under the circumstances,

it was entirely legal. The success of the partnership association depended upon the success of the canal. The original scheme contemplated the joint prosecution of the two projects, and that the contributions should be divided equally between the two. On this basis, the land company was indebted to the water-power canal project more than the amount it received from the sale of this stock.

*The Real-Estate Transfers.* While complaint is made in the brief of eleven separate transactions, the bill complains of but nine. It is scarcely necessary to say that the issue in this case is not broader than that made by the averments in the bill. We will adopt the phraseology of complainant's counsel, and enumerate and designate those transfers as follows: No. 1, "the Cargill Elevator property No. 1;" No. 2, "the Cargill Elevator property No. 2;" No. 3, "the S. D. Cargill property;" No. 4, "the Robert Eliot-Fitch property;" No. 5, "the Robert Eliot property;" No. 6, "the Ellsworth property;" No. 7, "the La Crosse Land Company property;" No. 8, "the W. S. Cargill property." Included in the enumeration 1 are two separate transfers. The facts, however, relating to the two are so similar that they demand no separate discussion, and these nine transfers will therefore be considered and treated as if they were but eight.

Of these transfers, five, viz., 1, 2, 4, 6, and 7, were effected by purchase at the foreclosure sale of mortgages; two, viz., 3 and 5, were effected by deeds transferring the equity of redemption to a grantee who already held the mortgage of the association on the property conveyed; and one, viz., 8, was a deed of the association in satisfaction of the indebtedness owed by it. Four of the mortgages at the foreclosure of which title was acquired (viz., Nos. 1, 2, 4, and 6) were purchase-money mortgages, one of which (No. 4) was given by the association to clear up a cloud on its title, and three (viz., Nos. 1, 2, and 6) existed before the association acquired title.

It is charged, as evidence of fraud, that the association, through its managers, failed to use available funds to pay

these mortgages. It is a complete answer to this charge to say that, in our judgment, the association did not have funds available to make said payment.

It is true that, at the foreclosure sales of the purchase-money mortgages, the land brought not only much less than it cost, but, in our judgment, less than it was worth. This, however, affords no convincing evidence of fraud. Defendant Samuel D. Cargill obtained nearly the entire benefit of the purchase at this low figure. He was personally responsible for the indebtedness secured by the mortgages through the foreclosure of which he acquired title. Prior to this he had been chairman of the board of managers of the partnership association. At the time of the sales he had nothing in his hands belonging to the association, and he was at liberty to act for himself. The sales were public, and there was nothing to prevent complainant or any other person from making competitive bids. In our judgment, Cargill had a right, under these circumstances, to purchase, either in his own name or in that of others, on terms demanded by his own best interests.

It is charged that two of these purchase-money mortgages (viz., Nos. 2 and 6) were paid by the association itself, and were then by its consent transferred to third parties, and subsequently foreclosed. Assuming that the averments in the bill permit this contention to be urged, it is an all-sufficient answer to say that we are convinced that these mortgages were not paid before said transfer. Our understanding of the facts is this: That the assignees advanced to the association the money to purchase the mortgages, under an agreement that they should be secured by an assignment from the mortgagees; that, in accordance with this agreement, the mortgages were purchased and assigned. We see nothing in these transactions to impair the legal force and effect of the mortgages.

The other title acquired at the foreclosure sale (viz., No. 7) was under a mortgage given by the association to one George W. Burton as trustee. This mortgage secured the payment of bonds to the amount of $47,500. It is a

sufficient answer to complainant's claim of fraud respect-
ing this mortgage to say that the proof is conclusive that
these bonds were sold, and that the association received
the proceeds, and properly used them.

It is contended that transfer No. 3, to Samuel D. Car-
gill,—effected by first mortgaging the property to Cargill,
and then later conveying to him the equity of redemp-
tion,—was without consideration, and that the property
greatly exceeded in value the pretended consideration.
We think there was a sufficient consideration for this
mortgage. The indebtedness secured by it arose as fol-
lows: Several pieces of the property of the association
were purchased, before its organization, in the name of
Cargill, who executed purchase-money mortgages. The
association agreed to indemnify Cargill for his personal
liability on these mortgages. There was a deficiency at
the foreclosure sale, for which the association was legally
liable, and this deficiency was the indebtedness secured by
said mortgage. The equity of redemption was conveyed
because the association had no means of paying the mort-
gage. There was no such disparity between the value of
the property and the indebtedness secured by the mort-
gage as to afford evidence of fraud.

Transfer No. 5 was a conveyance to Robert Eliot of the
equity of the association, as mortgagor, in lands on which
the grantee already held a mortgage. The mortgage
secured the payment of money advanced by the mortgagee,
and used by the association in paying its indebtedness.
The deed was made under an arrangement between the
association and Eliot that the same would be accepted in
satisfaction of his mortgage indebtedness. We are satis-
fied that the managers of the association acted in good
faith in making this conveyance, and that the land was
not worth the amount of the incumbrance upon it.

The eighth and last transfer (No. 8) was a deed directly
from the association to one W. S. Cargill in satisfaction of
an indebtedness due to a partnership composed of himself
and his father, W. W. Cargill. It is sufficient to say of

the facts of this transaction that we are convinced that the indebtedness was a *bona fide* indebtedness, and the property transferred worth no more than the indebtedness which it paid.

The ninth and tenth transactions complained of are outside the scope of the bill, in our judgment, and therefore no relief could be given respecting them. *Moran* v. *Palmer;* 13 Mich., at page 371 *et seq.* It is not improper, however, to refer to them. While these transactions are treated as two in complainant's brief, in one sense they are one, and may be treated together. The association assigned to W. W. Cargill, its manager, a large number of mortgages securing payment of the purchase money of lands sold by it. The purpose of this assignment was to secure the repayment of indebtedness owed Cargill, and to avoid the payment of taxes. While we cannot approve the latter motive, we cannot regard it as a fraud upon the members of the association, for whose benefit it was done. Some of these mortgages were subsequently foreclosed, and the title taken in the name of W. W. Cargill. A careful examination of the account convinces us that Cargill has accounted in this case for all of said mortgages remaining unforeclosed. There are, however, certain pieces of real estate acquired at the sale, now standing in his name, which belong to the association. As such a decree would be beyond the scope of complainant's bill, we shall not undertake to decree their conveyance.

We will now consider the legal objections urged by complainant against these transfers:

It is urged that the partnership association limited was never legally organized, because its articles are recorded in the office of the county clerk, instead of the register of deeds, as required by law. Section 6079, 2 Comp. Laws. It is a complete answer to this claim to say that the articles were in fact properly filed. At the time they were filed, the offices of the county clerk and register of deeds of Chippewa county were filled by the same person. When the offices were separated, the record of these articles was

taken by the county clerk. This mistake of the officer who had the custody of these papers obviously had no effect upon the legality of the organization.

The other objections relate only to the validity of the mortgages and deeds executed by the partnership association. These objections will be stated in connection with their disposition:

1. It is contended that some, if not all, of these mortgages and deeds were altogether void, because the authority for their execution was given at meetings of members of the association which, contrary to law, were held outside the State of Michigan. We do not think complainant is in a position where he can make this claim. At all or nearly all the meetings of members where action was taken bearing upon these transfers, complainant was represented by a duly authorized proxy. This, in our judgment, estops him from making the contention under consideration (see *Columbia National Bank of Tacoma* v. *Mathews,* 85 Fed. 934, 29 C. C. A. 491; *Handley* v. *Stutz,* 139 U. S., at page 422 [11 Sup. Ct. 530]), and from urging, as he does, the invalidity of the by-laws which authorized him to act by proxy. Neither can we agree with the contention of complainant that action taken at these meetings was void because notice calling them was served upon the members not personally, but through the mail. It was, in our judgment, entirely competent for the association to provide in its by-laws, as it did, for this method of serving said notice. Otherwise it would be almost impossible, under section 6083, 2 Comp. Laws, to procure a legal meeting of members, where, as in this case, they reside at different points in different States.

2. It is claimed that all the mortgages and deeds executed by the partnership association, limited, are void, because they were authorized at a meeting of the board of managers held outside the State. We must hold that complainant is in no position to make this claim. He himself signed, in La Crosse, Wis., the articles of association, which appointed the board of managers. Every one

of these managers lived in La Crosse, and it is to be presumed that he knew that they intended holding their meetings there. Complainant presented a claim at one of those meetings, and acted upon authority given him at another. He must be held to have sanctioned the conduct of which he now complains.

3. It is urged that the mortgages and deeds are void because the board of managers of the partnership association did not have authority to convey or mortgage its land. In the articles of association signed by complainant and his associates we find this statement: "The purpose and business of this association shall be the buying, owning, holding, improving, selling, exchanging, leasing, mortgaging, and dealing in real and personal property in the State of Michigan and elsewhere." It elected a board of managers, whose authority, though not precisely specified, we must infer was intended to be very broad, for they were empowered to "make such rules for the government and management of the business concerns of the association as they may think expedient, and for the general welfare of the association, which shall not be contrary to these articles and the laws by virtue of which this association is organized;" and its chairman and secretary were authorized to sign "notes, deeds, leases, mortgages, or other papers required to be executed for or in the name of the association." As the business of the association consisted in selling and mortgaging real estate, we are bound to infer that its board of managers, created to do that business, had power to authorize the execution of mortgages and deeds, and that they obtained such power from a writing signed by the complainant.

4. It is contended that certain of the mortgages and deeds of the association were void because they were authorized at a special meeting of the managers, at which all were not present. It is urged that we should presume that these meetings were irregular. We think all the objections urged under this head are answered by our own

decision in *Wells* v. *Rodgers*, 60 Mich., at page 530 (27 N. W. 673), where it is said:

"The record shows that a majority of the directors were present at such meeting, and that every director present voted to enter into this agreement. * * * There was no proof of notice, yet it did not appear affirmatively that there was a want of notice. The burden of proof is upon those who deny the regularity of a meeting, for want of notice, to prove it. *Sargent* v. *Webster*, 13 Metc. (Mass.) 504. The law presumes, in the absence of any proof to the contrary, that the proper notice was given, when a quorum are present at the meeting. 1 Rorer, Railroads, 191; *Citizens' Mut. Fire-Ins. Co.* v. *Sortwell*, 8 Allen, 217; *Com.* v. *Woelper*, 3 Serg. & R. 29 (8 Am. Dec. 628)."

5. It is contended that the conveyance to W. S. Cargill, enumerated as No. 8 in this opinion, is void because W. W. Cargill, one of the association's managers, who authorized the transfer, was a member of the partnership whose indebtedness was thereby paid. The evidence satisfactorily proves, as heretofore stated, that the association owed the debt which this conveyance paid. The objection urged would not affect the validity of the deed in a suit at law, nor should it be entertained in a court of equity. Cargill's right to this property, as a creditor of the association, is manifestly superior to that of complainant, as one of its members. If the deed were set aside, the original indebtedness would be revived, and the property in question, or other property of equal value, should be at once appropriated to pay it. We think, too, that the objection under consideration is answered by *Lucas* v. *Friant*, 111 Mich., at page 436 (69 N. W. 735).

We do not think any other legal objection urged by complainant demands discussion.

It results from these views that the decree of the court below dismissing the bill should be affirmed.

The other Justices concurred.